# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Judge Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 7384 | **DATE** | 6/5/2001 |
| **CASE TITLE** | Pamela Marshall vs. Golfview Development Center, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's Motion for Summary Judgment (doc. #30) & Plaintiff's Motion to Strike (doc. #39)

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial [set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendant's Motion for Summary Judgment (doc. #30) is **DENIED**. Plaintiff's Motion to Strike (doc. #39) is **GRANTED**. Joint pretrial order submission extended to 6/12/01 in triplicate to chambers.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | number of notices | Document Number |
|---|---|---|---|---|
| ✓ | No notices required. *distributed* Notices ~~mailed~~ by judge's staff. | | JUN 7 2001 date docketed | |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | 42 |
| | Mail AO 450 form. | FD-7 FILED FOR DOCKETING 01 JUN -6 PM 6:27 | 6-6-01 date mailed notice | |
| | Copy to judge/magistrate judge. | | | |
| JHC | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

PAMELA MARSHALL, )
    Plaintiff, )
)
) CAUSE NO. 99C7384
v. )
) JUDGE WILLIAM J. HIBBLER
GOLFVIEW DEVELOPMENT CENTER, INC.,)
    Defendant. )

## MEMORANDUM AND OPINION

Plaintiff, Pamela Marshall, filed a complaint with this Court alleging claims of sexual discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et seq. Defendant, Golfview Development Center, filed a motion for summary judgment claiming that Plaintiff has failed to prove a hostile work environment existed and cannot demonstrate that an adverse employment action took place. Plaintiff then filed a motion to strike portions of Defendant's reply brief in support of the motion for summary judgment. This Court has reviewed the parties' submissions and holds that Defendant's Motion for Summary Judgment (doc. #30) should be **DENIED** and Plaintiff's Motion to Strike Portions of Defendant's Reply Brief (doc. #39) should be **GRANTED**.

## BACKGROUND

Defendant is a residential home for mentally disabled individuals over the age of 12. In April 1995, Defendant hired Plaintiff and Toyin Ashaye ("Ashaye") for the position of rehabilitative aide. Both Plaintiff and Ashaye were required by Defendant to complete a certification program, and both did so successfully. After completing the program, both Plaintiff and Ashaye were assigned to the night shift at Defendant's facility. During the night shift, ten habilitative aides, one supervisor, and

1

one nurse were on staff. While on shift, habilitative aides reported to the night shift supervisor. During Plaintiff's employment, Scott Rafalson ("Rafalson") was the night shift supervisor. Rafalson's direct supervisor was Kathy LoBue ("LoBue").

On June 2, 1995, Plaintiff and Ashaye were assigned to work in the same wing of the building. Toward the end of their shift, between 7:45 and 8:00 a.m., Ashaye motioned to Plaintiff with his finger to come toward him while wagging his tongue out of his mouth. Ashaye then told Plaintiff "I see something on your body I want." Plaintiff did not respond to Ashaye and left work at the end of her shift without reporting the incident. The next morning, on June 3, Plaintiff and Ashaye were again assigned to the same wing of the building. At some point during the night, Plaintiff was reading a Bible and Ashaye approached her and, without provocation, grabbed her breast. Plaintiff then cursed Ashaye and told him to keep his hands off of her. About twenty-five minutes after the incident, Marshall reported Ashaye's conduct to Rafalson. She explained what occurred on June 2 and 3 to Rafalson and he informed Plaintiff that he would talk to Ashaye. A short time later, Plaintiff saw Ashaye leave Rafalson's office and Rafalson told Plaintiff that he had spoken with Ashaye about the incidents.

Although the harassment did not continue, Plaintiff and Ashaye worked together on at least six separate shifts between June 3 and June 18. Troubled by Rafalson's apparent lack of concern over the situation, Plaintiff contacted LoBue. During her conversation with LoBue, Plaintiff described her encounters with Ashaye and explained Rafalson's mishandling of the situation. Plaintiff told LoBue that she could no longer tolerate the situation as it was and that she must resign. However, within hours of resigning her position, Plaintiff had a change of heart and contacted LoBue to rescind her resignation. LoBue then told Plaintiff that she would schedule a meeting the next

2

morning to deal with the situation. When Plaintiff arrived at the meeting, LoBue informed her that Defendant was holding her to her original resignation and asked Plaintiff to sign a voluntary separation notice.

## SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that a motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Bragg v. Navistar Int'l Trans. Corp.*, 164 F.3d 373 (7th Cir. 1998). During its summary judgment analysis, this Court must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560 (7th Cir. 1996).

The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Larimer v. Dayton Hudson Corp.*, 137 F.3d 497 (7th Cir. 1998). A question of material fact is a question which will be outcome determinative of an issue in the case. The Supreme Court has instructed that the facts which are considered material in a specific case shall be determined by the substantive law controlling the given case or issue. *Anderson*, 477 U.S. at 248. Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine [material] issue for trial." *Id.* The nonmoving party cannot rest on its pleadings, *Weicherding v. Riegel*, 160 F.3d 1139 (7th Cir. 1998); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920-21

3

(7th Cir. 1994), nor may that party rely upon conclusory allegations in affidavits. *Smith v. Shawnee Library Sys.*, 60 F.3d 317, 320 (7th Cir. 1995). This Court may not consider hearsay statements which are otherwise inadmissible at trial, nor may it consider such deposition testimony when considering a motion for summary judgment. *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997); *Patel v. Allstate Ins. Co.*, 105 F.3d 365, 368 n. 1 (7th Cir. 1997); *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996); *Randle*, 876 F.2d at 570 n. 4. This general standard is applied with added rigor in employment discrimination cases, where intent is inevitably the central issue. *DeLuca v. Winer Indus.*, 53 F.3d 793 (7th Cir. 1992); *Tomasello v. Delta Airlines, Inc.*, 8 F. Supp.2d 1090 (N.D. Ill. 1998). Accordingly, "affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Collier v. Budd Co.*, 66 F.3d 886, 892 (7th Cir. 1995); *Courtney v. Biosound, Inc.*, 42 F.3d 414, 418 (7th Cir. 1994). Applying the above standard, this Court addresses Defendant's motion.

## ANALYSIS

### A. Plaintiff's Sexual Harassment Claims

Title VII forbids "discriminat[ion] against any individual with respect to his ... terms [or] conditions ... of employment, because of ... sex." 42 U.S.C. § 2000e-2(a)(1); *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 743 (1998). To establish a claim under Title VII, Plaintiff may either offer direct evidence or indirect evidence of discrimination. *Gadsby v. Norwalk Furniture Corp.*, 71 F.3d 1324, 1330 (7th Cir. 1995). More specifically, "[a] Title VII plaintiff can satisfy [her] burden of proof by two methods: demonstrating that sex discrimination motivated the harassment, or, because of the difficulty in directly proving discrimination, [she] may employ the indirect, burden-shifting method set forth in *McDonell Douglas v. Green*, 411 U.S. 792 (1973)." *Pasqua v.*

*Metropolitan Life Ins. Co.*, 101 F.3d 514, 516 (7th Cir. 1996) (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985)). If Plaintiff relies on indirect evidence of discrimination, then this Court must apply the burden-shifting analysis of McDonnell Douglas. Under *McDonnell Douglas*, it is the plaintiff's burden to establish a prima facie case of sexual harassment by a preponderance of the evidence. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). By establishing a prima facie case, Plaintiff "creates a presumption that the employer unlawfully discriminated against" her. *Helland v. South Bend Comm. Sch. Corp.*, 93 F.3d 327, 329 (7th Cir. 1996). Ultimately, to survive the summary judgment motion, Plaintiff must produce evidence which, if interpreted favorably in her favor, "could persuade a reasonable jury that the employer had discriminated against [her]." *Rand v. CF Industries, Inc.*, 42 F.3d 1139, 1147 (7th Cir. 1994) (quotations and citations omitted).

1. Hostile Work Environment

"Sexual harassment which is so 'severe or pervasive' as to 'alter the conditions of the victim's employment and creates an abusive working environment' violates Title VII." *Parkins v. Civil Constructors of Illinois, Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998) (quoting *Faragher v. City of Boca Raton*, – U.S. –, –, 118 S. Ct. 2275, 2283 (1998) (internal citations and quotations omitted). "Whether the harassment rises to this level turns on a constellation of factors that include 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 806-07 (7th Cir. 2000) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). This Court must also assess the subjective and objective impact of the harassment on Plaintiff's work environment. *Id.* at 807.

"The work environment cannot be described as 'hostile' for purposes of Title VII unless a reasonable person would find it offensive and the plaintiff actually perceived it as such." *Id.* (citing *Faragher*, 524 U.S. at 788.

There can be no doubt that Plaintiff has met the subjective requirement. Plaintiff has demonstrated that she perceived her work environment as hostile as a result of the harassment. Not only did Plaintiff tell Ashaye to keep his filthy hands off of her, but within minutes of the encounter she reported the incident to her supervisor. Therefore, this Court must determine whether Plaintiff's work environment was objectively hostile under the reasonable person standard. This Court finds the Seventh Circuit's recent opinion in *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798 (7th Cir. 2000), to be not only instructive to the case at hand, but analogous as well.

The plaintiff in *Hostetler*, brought a hostile work environment suit against her employer alleging sexual harassment. She claimed that one day at work, a fellow employee grabbed her face and stuck his tongue down her throat. She immediately pulled away from him, grabbed her belongings, and left work without saying anything to the aggressor or anyone else. The next day, she was at work when the harasser approached her from behind and grabbed her face. She pulled away from him and put her head between her knees so that he would not kiss her and then he proceeded to unfasten her brassiere. The harasser only stopped when another employee entered the office. Finally, at some other point during the week, the aggressor made a crude comment to the plaintiff. The plaintiff reported the incidents to her supervisor, and shortly thereafter she was transferred to a less desirable location. Quality Dining filed a motion for summary judgment which the district court granted. The Seventh Circuit reversed, however, holding that genuine issues of material fact existed as to the severity of the harassment alleged and the propriety of the defendant's

response. After careful review and comparison of *Hostetler* and this case, this Court finds the two to be virtually identical and follows the analysis and holding closely.

"[T]he objective severity of the harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (quoting *Harris*, 510 U.S. at 23). In this case, Ashaye's conduct falls within the realm of hostile such that it created an abusive work environment. Not only did he inappropriately proposition Plaintiff, but he also grabbed her breast without provocation or invitation. These acts are exactly the type of offensive conduct that the Seventh Circuit has repeatedly considered hostile and repugnant. It is in cases, such as this one, where "sexual assaults; *other physical contact*, whether amorous or hostile, *for which there is no consent express or implied; uninvited sexual solicitations*; intimidating words or acts; obscene language or gestures; [or] pornographic pictures," exist that the line between "vulgar and mildly offensive and deeply offensive and sexual harassment" is crossed. *Hostetler*, 218 F.3d at 807 (emphasis added) (citing *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 67 (1986); *Harris*, 510 U.S. at 21; *Carr v. Allison Gas Turbine Division*, 32 F.3d 1007, 1009-10 (7th Cir. 1994)). Because a reasonable person in Plaintiff's position may find inappropriate sexual propositions and uninvited physical contact to be humiliating and possibly threatening, this Court finds that Plaintiff's work environment was indeed hostile. *Hostetler*, 218 F.3d at 808.

Defendant makes much of the fact that Plaintiff was not physically injured and that Ashaye's actions were relatively brief isolated incidents. However, contrary to Defendant's assertions, "[h]arassment need not be severe *and* pervasive to impose liability; one or the other will do, [and] [t]here is no 'magic number of incidents required to establish a hostile environment." *Id.* (citations

7

omitted). In fact, the Seventh Circuit has repeatedly recognized that even one act of harassment will suffice if it is egregious. *Id.* (citing *Smith v. Sheahan*, 189 F.3d 529, 533-34 (7th Cir. 1999); *DiCenso v. Cisneros*, 96 F.3d 1004, 1009 (7th Cir. 1996); *Daniels v. Essex Group, Inc.*, 937 F.2d 1264, 1273-74 & n. 4 (7th Cir. 1991); *King v. Bd. of Regents of Univ. of Wis. Sys.*, 898 F.2d 533, 537 (7th Cir. 1990); *Bohen v. City of East Chicago, Indiana*, 799 F.2d 1180, 1186-87 (7th Cir. 1986)). The issue before this Court is not whether Ashaye's conduct was harassing, it has already been established that it was, the issue is whether his acts "are severe enough, without the added weight of repetition over time or cumulation with other acts of harassment, to stand alone as the basis for a harassment claim." *Hostetler*, 218 F.3d at 808. In this case, Ashaye's conduct is severe enough to stand as the basis for Plaintiff's harassment claim. Ashaye grabbed Plaintiff's breast while at work. Rendering a relatively innocuous environment into a one which was threatening and humiliating. Because the conduct at issue involves unwelcome contact with the intimate parts of Plaintiff's body, this Court believes that a reasonable person would think Ashaye's conduct serious enough to alter Plaintiff's work environment. *Id.* at 809.

2. Employer Negligence

Although employers will be held strictly liable for hostile environment sexual harassment committed by their supervisors, *Burlington Indus. v. Ellerth*, 524 U.S. 742 (1998), "[a]n employer's legal duty in co-employee harassment cases will be discharged if it takes reasonable steps to discover and rectify acts of sexual harassment by its employees. *Parkins*, 163 F.3d 1035. In order to hold the employer liable, it must have either notice or knowledge of the harassment. *Id.* Ultimately, an employer will be held liable for a co-worker's harassment only "when they have been negligent either in discovering or remedying the harassment." *Id.* at 1032.

In ascertaining whether the employer is liable for co-worker harassment, a two-part analysis is employed. The employer becomes liable for the co-worker's harassment if it "know[s] or should know that wrongdoing is afoot and yet fail[s] to take steps reasonably designed to stop it." *Hostetler*, 218 F.3d at 811. In this case, there can be no doubt that Defendant knew that Ashaye had harassed Plaintiff. In fact, Defendant readily admits that a meeting between Plaintiff and Rafalson took place in which she informed him of the harassment. However, the more difficult question is whether Defendant took steps reasonably designed at curbing the harassment. An employer "will not be liable for the hostile environment absent proof that it failed to take appropriate remedial measures once apprized of the harassment." *Id.* at 809. In this case, Defendant has failed to come forward with any documentary evidence that Ashaye was disciplined for the two incidents of which Plaintiff complains. The only reprimand brought forth by Defendants is a written reprimand documenting a May 26, 1995 allegation that Plaintiff denies making.[1] While Defendant freely admits that Rafalson spoke to Ashaye on June 3, 1995, there are no records to reflect what, if any, discipline was taken to rectify the situation. Additionally, there can be no doubt that between June 4 and June 20, 1995, Plaintiff and Ashaye worked together no less than six times. While this Court is reluctant to come forth with a hard and fast rule holding that an employer's failure to separate co-workers in situations such as these amounts to negligence, a reasonable factfinder could find that negligence existed here. In this case, Plaintiff worked with her harasser at least six times in less than

---

[1] According to Defendant's version of events, On May 26, 1995, Plaintiff complained to Rafalson about Ashyaye touching her hair. The record reflects that Rafalson spoke with Ashaye about the incident and made a record in Ashaye's employment file. However, Plaintiff emphatically disputes that the May 26, 1995 incident took place. Taking all allegations in a light most favorable to Plaintiff this Court must come to the conclusion that a genuine issue of fact exists as to whether this incident in fact happened. However, there can be no doubt that this is Ashaye's only reprimand submitted to this Court.

a three week span. This was the case even though eight other habilitative aides worked the night shift with Plaintiff and Ashaye. Arguably, Defendant could have taken steps to separate Plaintiff and Ashaye by switching Plaintiff with another aide from the night shift. The Seventh Circuit has found that in some cases, the mere presence of a harasser can create a hostile work environment. *Adusimilli v. City of Chicago*, 164 F.3d 353, 362 (7th Cir. 1998), and such is the case here. In light of the facts, a jury could determine that Defendant was negligent in allowing the two to continue to work together when other alternatives existed.

CONCLUSION

B. Plaintiff's Retaliation Claims

This Circuit has held that adverse employment action consists of termination of employment, a demotion as evidenced by a decrease in wages or salary, a less distinguished job title, a material loss of benefits, or significantly diminished job responsibilities. *Dey v. Colt Construction and Development Co.*, 28 F.3d 1446 (7th Cir. 1994). In this case, Defendant argues that Plaintiff cannot make a claim for retaliation because she voluntarily resigned from her position. Plaintiff counters that because she did not voluntarily resign, she was terminated, or in the alternative, she was constructively discharged.[2] This Court finds that a genuine issue of material fact exists as to whether Plaintiff was terminated, as opposed to voluntarily resigning, and therefore summary judgment on the retaliation claim is **DENIED.**

Title VII provides that "[i]t shall be unlawful employment practice for a employer (1) to fail

---

[2] Defendant asserts that Plaintiff has waived her constructive discharge argument because she is raising for the first time in her response to the motion for summary judgment. This Court is of the opinion that whether or not Plaintiff's constructive discharge claim is waived, Plaintiff has failed to demonstrate that her working conditions were so onerous or demeaning that she was effectively fired. *Monaco v. Fuddruckers, Inc.*, 1 F3d 658, 661 (7th Cir. 1993). Therefore, Plaintiff has failed to state a claim for constructive discharge.

or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. §2000e-2(a)(1). Title VII also makes it unlawful for an employer to discriminate or retaliate against any of its employees for opposing an unlawful, discriminatory employment practice. 42 U.S.C. §2000e-3(a); *Parkins*, 163 F.3d at 1038. To establish a prima facie case of retaliation a Plaintiff must show that a reasonable jury could find that (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action. *Parkins*, 163 F.3d at 1039 (citing *Debs v. Northeastern Ill. Univ.*, 153 F.3d 390, 397 (7th Cir.1998)). Most importantly for this Court's analysis is that in order for Plaintiff to prove retaliation, she must demonstrate that she has suffered some sort of adverse employment action. *Ribando v. United Airlines, Inc.*, 200 F.3d 507, 510 (7th Cir. 1999). To be "adverse," the action "must be 'materially' adverse, meaning more than 'a mere inconvenience or an alteration of job responsibilities.' " *Id.* (quoting *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir.1996)). If Plaintiffs establish these elements, then Defendant must produce a legitimate, nondiscriminatory reason for its actions. *Parkins*, 163 F.3d at 1038-39. Once this reason is produced, Plaintiffs must prove that the reason is pretextual. *Id.* at 1039 (citing *Debs*, 153 F.3d at 397).

The general rule is that resignations are presumed to be voluntary. *Christie v. United States*, 518 F.2d 584, 587 (Fed. Cir. 1975); *Graehling v. Village of Lombard*, No. 94 C 4084, 1994 WL 698525, at *8 (N.D. Ill. Dec. 12, 1994). "The presumption remains unless the employee comes forward with sufficient evidence to establish that the resignation was involuntarily extracted." *Graehling*, 1994 WL698525, at *8 (citing *Alvarado v. Picur*, 859 F.2d 448, 453 (7th Cir. 1988). If

this Court finds the resignation to have been voluntary, then any procedural rights to which Plaintiff is entitled will be waived. *Id.* (citations omitted).

> Coercion, or duress, may invalidate a resignation if, from the totality of the circumstances, "it appears that the employer's conduct in requesting or obtaining ... the resignation effectively deprived the employee of free choice in the matter." However, were an employer leaves the employee with a choice to "stand pat and fight," the resignation is not considered coerced. Merely because a plaintiff is "faced with an inherently unpleasant situation in that [his] choice was arguably limited to two unpleasant alternatives does not obviate the voluntariness of [his] resignation.

*Graehling*, 1994 WL 698525, at *8 (citations omitted). It is clear that an employee faced with the option of resigning or being discharged *for cause* shall not be considered as having been forced to resign. *Id.* (citing *Christie*, 518 F.2d at 587). Therefore, Plaintiff must demonstrate that Defendant believed that the basis for discharge was unfounded to establish duress or coercion on Defendant's part. *Id.* (citing *Illinois ex rel. Schoepf v. Bd. of Educ.*, 606 F. Supp. 385, 390 (N.D. Ill 1985)).

In this case, Plaintiff telephoned LoBue and told her of the problems she was experiencing with Ashaye and Rafalson. Plaintiff explained that Ashaye had sexually harassed her on June 2 and 3, and that in her opinion, Rafalson had failed to rectify the situation. Plaintiff tendered her resignation and LoBue accepted it without offering another remedy. Within hours of speaking with LoBue, Plaintiff phoned LoBue again, but this time to rescind her resignation. During that conversation, Plaintiff indicated her willingness to work through her problems with Ashaye and Rafalson. However, instead of offering assistance, LoBue called a meeting with Plaintiff first thing the next morning and promptly held Plaintiff to her original decision. Plaintiff was not given an explanation for LoBue's actions, in fact, the only thing that she was given was a voluntary separation form which required her signature. Defendant has not claimed that Plaintiff was given a choice between two unpleasant situations, such as the option of resigning or being terminated for cause.

12

Instead, Plaintiff was given the option of resigning or being terminated for no reason whatsoever. This is not a case where Plaintiff left for greener pastures or resigned and then sought reinstatement at a much later date. In this case, only two hours passed between the time Plaintiff quit and changed her mind. The fact that Defendant refused to reinstate her after such a short time period could be interpreted as Defendant's retaliation against Plaintiff for filing complaints of sexual harassment. Because a factfinder could reach the conclusion that Defendant's proposed basis for Plaintiff's termination was unfounded, summary judgment on the retaliation claim must be denied.

## MOTION TO STRIKE

Finally, Plaintiff requests that this Court strike Defendant's reply brief. Plaintiff claims that violated Local Rule 56 by incorporating into its arguments numerous facts which were not raised in either party's Local Rule 56 submissions. One example of Defendant's conduct is the inappropriate inclusion of an entirely new argument; the harassment never took place because Ashaye and Plaintiff did not work together on June 2 and 3. Had Defendant made this argument in its motion for summary judgment, this Court could have reached a different conclusion. However, this is a shining example of the hazards of saving one's best argument for last. It is well-established that arguments raised for the first time in a parties' reply brief are waived. *Marie O. v. Edgar*, 131 F.3d 610, 614 n.7 (7th Cir. 1997); *United States v. Magana*, 118 F.3d 1173, 1198 n. 15 (7th Cir.1997; *Wilson v. Giesen*, 956 F.2d 738, 741 (7th Cir. 1992); *Murphy v. Village of Hoffman Estates*, No. 95 C 5192, 1999 WL 160305, at *2 (N.D. Ill March 17, 1999); *United States v. Gust K. Newberg Construction Co.*, No. 93 C 5219, 1995 WL 229058, at *6 nn. 1 & 2 (N.D. Ill. Apr. 13, 1995). To the extent that Defendant attempts to raise new and independent arguments in its reply brief, this Court shall not consider the claim. Because this Court will not consider arguments raised

for the first time in the reply brief, Plaintiff's motion to strike Defendant's reply is **GRANTED**.

CONCLUSION

After careful consideration and review, this Court finds that a reasonable factfinder could hold that Plaintiff has made a successful claim for sexual harassment and retaliation. This is because Ashaye's actions toward Plaintiff

> were not, in sum, petty vulgarities with the potential to annoy but not to objectively transform the workplace to a degree that implicates Title VII. ... When the harassment moves beyond the sort of casual contact which (if it were consensual) might be expected between friendly co-workers, and manifests in more intimate, intrusive forms of contact, it becomes increasingly difficult to write the conduct off as a pedestrian annoyance.

*Hostetler*, 218 F.3d at 808. Therefore, Defendant's Motion for Summary Judgment (doc. #30) is **DENIED**.

**IT IS SO ORDERED.**
DATED: June 5, 2001

_____
WILLIAM J. HIBBLER, DISTRICT JUDGE